**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| DARREN SMITH,<br>*Plaintiff*,<br><br>v.<br><br>DEPARTMENT OF SOCIAL SERVICES,<br>ANDREA BARTON REEVES, and<br>PAUL BOURDOULOUS,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>) | 3:26-CV-00537 (SVN)<br><br><br><br><br><br>October 26, 2026 |

**RULING ON MOTION TO DISMISS AND MOTION FOR PRELIMINARY INJUNCTION**

Sarala V. Nagala, United States District Judge.

Plaintiff Darren Smith brings suit against the Defendants Connecticut Department of Social Services ("DSS") and DSS Commissioner Andrea Barton Reeves and Director of Support Enforcement Services ("SES") Paul Bourdoulous in their official capacities, seeking to restrain them from enforcing state child support judgments. Compl., ECF No. 1 at 2. Plaintiff claims Defendants imposed income withholding and liens on Plaintiff's Social Security income based on child support arrears, and have hindered Plaintiff's ability to obtain a passport. ECF No. 1 at 2–3. Plaintiff raises one claim under 42 U.S.C. § 1983, for violation of the Fourteenth Amendment's procedural due process requirements.

Plaintiff has also sought a preliminary injunction requesting the Court halt the Defendant's enforcement actions, among other relief. Mot. for Prelim. Inj., ECF No. 2 at 4. Defendants oppose the motion for a preliminary injunction, and have filed a motion to dismiss. Mot. to Dismiss, ECF No. 30. For the reasons explained below, the Court finds that the *Rooker-Feldman* doctrine does not apply to bar Plaintiff's claims. But there are independent grounds to dismiss based on *Younger*

abstention. The Court therefore GRANTS Defendants' motion to dismiss and DENIES Plaintiff's motion for preliminary injunction as moot.

## I. FACTUAL BACKGROUND

The Court bases the following recounting of the facts principally on the complaint, although its facts are sparse. When considering a motion to dismiss, the Court treats the factual allegations of the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### A. The Complaint

Plaintiff alleges only a few facts in the five-page complaint. He claims that, on or around August 26, 2025, Defendants imposed a lien based on alleged arrears, followed by a hearing after the lien had already taken effect. ECF No. 1 at 2. He further claims that "[w]ithholdings and intercepts remain ongoing in 2025 and 2026, affecting Plaintiff's Social Security income and financial subsistence." *Id.* Plaintiff also claims he has "requested a complete, certified, itemized accounting of the alleged arrears," but Defendants have failed to provide a certified accounting and have not meaningfully considered available administrative remedies, such as an "administrative compromise of state-owned arrears." *Id.* at 3. He further states that he has requested clarification regarding a passport certification pursuant to 42 U.S.C. § 652(k), "without meaningful response." *Id.* Plaintiff opposes passport restrictions as a violation of his "freedom of movement" and states they "implicated protected liberty interests under the Fourteenth Amendment." ECF No. 1 at 2.

Plaintiff has incorporated four exhibits into his complaint: (1) his correspondence to the Connecticut Department of Social Services and SES requesting a "certified accounting" of his child support arrearages, ECF No. 3 at 1–11 (Exhibit A); (2) documentation showing that Plaintiff's Social Security income is being withheld, *id.* at 12–15 (Exhibit B); (3) documentation relating to lien and other enforcement activity taken by Defendants, *id.* at 16–19 (Exhibit C); and

(4) correspondence between Plaintiff and Defendants, including what Plaintiff characterizes as "unanswered requests and communications," but that actually appear to be communications from Defendants to Plaintiff, *id.* at 20–24 (Exhibit D).

On the basis of these allegations and exhibits, Plaintiff has sued Defendant Andrea Barton Reeves, the Commissioner of the Connecticut DSS, and Defendant Paul Bourdoulous, Director of SES, both in their official capacities only, for violation of his Fourteenth Amendment procedural due process rights, under 42 U.S.C. § 1983. ECF No. 1 at 2–4. He seeks "prospective declaratory and injunctive relief." *Id.* at 4. Additionally, although Plaintiff does not list the Connecticut DSS in the "parties" section of his complaint, it is listed in the case caption, so the Court considers the agency to be a Defendant here as well. *Id.* at 1.

B. Underlying State Court Cases

As Defendants point out, this case is connected to two underlying state child support actions in which Plaintiff was adjudicated to be the obligor: (1) a marital dissolution action involving five children initiated in 1996, *Denise (Brodie) Smith v. Darren Smith*, Docket No. NNH-FA96-0389957; and (2) a parentage petition involving one child initiated in 1982, *Mildred Richard (State of Connecticut) v. Darren Smith*, Docket No. NNH-FA94-363499. The Court may take judicial notice of filings in these cases, despite the fact that they are not discussed in the complaint, because "[a] court may appropriately take judicial notice of filings and judgments made in state courts." *VDARE Found., Inc. v. James*, 162 F.4th 77, 83 (2d Cir. 2025).

Both cases resulted in state court judgments against the Plaintiff, and they are now on appeal. In the *Denise Smith* marriage dissolution case, on October 8, 2025, Plaintiff filed a motion to open and challenge the dissolution judgment, on the basis of a lack of a paternity determination and improper service of process. Defs.' Memo. of Law, ECF No. 30-1 at 5; Mot. to Open J., ECF No. 30-13 at 3–9. On December 19, 2025, the Family Support Magistrate court denied the motion.

ECF No. 30-1 at 5. Plaintiff appealed to Superior Court, which affirmed the Magistrate court's decision, and then appealed again to the Connecticut Appellate Court, where the case is still pending. *Id.* at 6; *Denise Smith v. Darren M. Smith*, AC 49791 (Conn. App.).

In the *Richard* parentage petition matter, all support obligations had been satisfied, and the case had been closed by Defendants effective November 7, 2022. ECF No. 30-1 at 3; ECF No. 3 at 21. Plaintiff nonetheless filed a motion to open the judgment on September 30, 2025, on grounds of improper service. ECF No. 30-1 at 3; Mot. to Open J., ECF 30-4 at 1–2. The motion was transferred to Superior Court, where it was ultimately denied after a hearing at which both Plaintiff and the Assistant Attorney General were present. ECF No. 30-1 at 3; Order, ECF No. 30-5 at 1–2. Plaintiff had sought to open the judgment based on the claim that initial abode service was invalid in 1982, stating he had not lived at the residence where he was served. ECF 30-5 at 2. Judge Spader, who denied the motion, noted that Plaintiff was raising a claim more than 40 years after initial judgment had been entered, though improper service could be a basis to argue a judgment is invalid. *Id.* Judge Spader held: "[t]he purpose of service is to give a litigant an opportunity to be timely heard on legal matters. He was heard multiple times on this matter, as early as in 1994. He had knowledge of this case and the orders therein and did not raise jurisdictional claims in a timely manner. To the extent he requests that the judgment be opened for invalid initial service in 1982, the defendant had the opportunity to timely argue the service since, at least, 1994." *Id.* *See also Richard v. Smith,* Docket No. NNH-FA94-0363499-S (Ct. Super. Ct. July 21, 1994) (Spader, J.). Plaintiff appealed the ruling to the Connecticut Appellate Court, where it remains pending. ECF No. 30-1 at 3; *Richard v. Smith,* AC 49472 (Conn. App.).

C. Additional Information Submitted In Opposition to Plaintiff's Motion for a Preliminary Injunction

In connection with their opposition to Plaintiff's motion for a preliminary injunction, Defendants have submitted the following information. In the marital dissolution action, the Superior Court ordered that Plaintiff pay child support in the amount of $245.84 per week, along with a judgment for child support arrears in the amount of $77,780.94, which was inclusive of arrears that accumulated between 1987 and 1997. *See* Bourdoulous Aff., ECF No. 24-3 ¶ 6. In April of 2018, Denise Smith submitted a written request to remove the arrears that were owed to her, and as a result SES removed $79,645.35 that the Plaintiff owed Ms. Smith. *Id.* ¶ 9. Nonetheless, the Superior Court found that $52,840.70 in child support arrears were still owed to the State of Connecticut, reflecting periods of time where the children received financial state assistance. *Id.* ¶ 10.

When Plaintiff filed for retirement benefits under Title II of the Social Security Act, the State, through SES, issued an income withholding order to the Social Security Administration to withhold $15 per week, or $65.18 per month, from any eligible retirement benefit. *Id.* ¶ 14. The Connecticut Department of Social Services also sent the Social Security Administration a "Notice to Lien and Withhold Social Security," reflecting a lien in the amount of $12,164.86 and a total child support balance of $42,718.71. *Id.* ¶ 16. Plaintiff was sent notice of the lien, which included information on his right to request an administrative hearing if he disagreed with imposition of the lien. *Id.* The Department of Social Services' Office of Child Support Enforcement's records do not reflect that Plaintiff requested an administrative hearing to contest the lien. *Id.* ¶ 17. Connecticut has received $65.00 monthly from the Social Security Administration between September 3, 2025, and May 1, 2026, to satisfy Plaintiff's child support obligations, but has not

received any lump sump payments. *Id.* ¶¶ 18, 20. Plaintiff still owes $42,133.71 in child support arrears to the State of Connecticut. *Id.* ¶ 21.

D. <u>Other Actions Filed by Plaintiff</u>

The Court notes that Plaintiff has filed two other actions similar to this one, which sought to directly attack the underlying family court judgments. First, in October of 2025, Plaintiff sued the Connecticut Department of Social Services and its director in his official and individual capacities, and SES and its the Director in his official and individual capacities in federal court. *See Smith v. Conn. Dep't of Social Servs.*, No. 3:25-CV-1653 (VDO), Compl., ECF No. 1 ("*Smith I*"). The Court (Oliver, J.) dismissed the complaint in that action under the *Rooker-Feldman* doctrine for lack of jurisdiction, and for failure to state a claim because Plaintiff's claims were barred by the three-year statute of limitations that applies to § 1983 claims. *Id.*, Order, ECF No. 34.

Second, later in the month of October 2025, Plaintiff brought suit in Connecticut Superior Court against the same Defendants, again challenging the underlying family court judgments. *See Smith v. Dep't of Social Servs., et al.*, No. NNH-CV25-5064898-S**,** 2026 WL 3000992, at *3 (Ct. Super. Ct. 2026) (memorandum of decision dismissing case). The Superior Court dismissed the suit against DSS on grounds of sovereign immunity and against all Defendants under the prior pending action doctrine, referencing the underlying family court proceedings. *Id.* at *4–8.

**DEFENDANTS' MOTION TO DISMISS**

In their motion to dismiss, Defendants raise several threshold grounds for dismissal. First, they claim the Court lacks subject matter jurisdiction over Plaintiff's complaint under the *Rooker-Feldman* doctrine and because he fails to plead an ongoing violation of federal law that falls under the *Ex parte Young* exception to Eleventh Amendment immunity. Next, they contend that the

complaint should be dismissed because the Court should abstain from the matter under the *Younger* abstention doctrine and because the complaint fails to state a claim.

For the reasons explained below, the Court holds that it has subject matter jurisdiction over this case, but that it must abstain from continuing to hear it in favor of the pending state court proceedings, and thus it dismisses the action.

## II. SUBJECT MATTER JURISDICTION

### A. *Rooker-Feldman* Doctrine

First, the Court rejects Defendants' that the *Rooker-Feldman* doctrine applies here.

#### *1. Legal Standard*

Federal Rule of Civil Procedure 12(b)(1) permits a defendant to move to dismiss for lack of subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

The *Rooker-Feldman* doctrine is derived from two U.S. Supreme Court cases, *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Under the *Rooker-Feldman* doctrine, federal courts lack jurisdiction over cases that essentially amount to appeals of state court judgments. *T.M. v. Univ. of Maryland Med. Sys. Corp.*, 608 U.S. 668, 677 (2026); *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 283–84 (2005). The doctrine is rooted in the principle that the jurisdiction to review a state court judgment is exclusively within the authority of the United States Supreme Court. *Exxon Mobile Corp.*, 544 U.S. at 283; 28 U.S.C. § 1257.

Just last term, the U.S. Supreme Court held that the *Rooker-Feldman* doctrine applies to cases that are effectively appeals of state court judgments even if the state court judgments are pending appeal in the state appellate courts. *T.M.*, 608 U.S. at 672, 684. But it cautioned that

*Rooker-Feldman* remains a "narrow" doctrine. *Id.* at 672. For the *Rooker-Feldman* doctrine to apply, four elements must be met: "(1) the federal court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Hoblock v. Albany Ctny. Bd. of Elecs.*, 422 F.3d 77, 85 (2d Cir. 2005), *abrogated on other grounds by T.M.*, 608 U.S. 668.[1]

2. *Discussion*

The Court holds that its exercise of jurisdiction over Plaintiff's Fourteenth Amendment procedural due process claim is not barred by the *Rooker-Feldman* doctrine.

First, the Court acknowledges that two of the doctrine's requirements are met: Plaintiff lost in state court, in both the marriage dissolution and parentage cases, insofar as both cases resulted in judgments requiring him to pay child support; and those state court judgments were rendered before he filed the instant federal case. That both are currently pending appeal does not mean *Rooker-Feldman* cannot apply. *See T.M.*, 608 U.S. at 672, 684.

But the Court does not perceive Plaintiff's complaint as complaining of injuries caused by those state court judgments or inviting review and rejection of them, as would be required for dismissal on *Rooker-Feldman* grounds. At bottom, Plaintiff alleges that he was deprived of procedural due process when Defendants took steps to enforce the state court judgments by withholding his Social Security benefits and placing a lien on those benefits without affording him a pre-deprivation hearing. He is not seeking reversal of the underlying state court judgments. Rather, he is claiming that the process by which Defendants enforced those judgments was

[1] In *T.M.*, the Supreme Court overruled the Second Circuit's previously-held view that *Rooker-Feldman* could not apply unless state appellate proceedings had ended. *See Hunter v. McMahon*, 75 F.4th 62, 65 (2d Cir. 2023), *abrogated by T.M.*, 608 U.S. 668.

constitutionally flawed; this is an injury separate and distinct from the underlying state court judgments themselves. Put another way, even if the underlying state court judgments were correct and Plaintiff owes the child support arrears they imposed on him, Plaintiff may still have suffered injury if Defendants employed a constitutionally defective procedure for enforcing those judgments. Thus, the Court does not construe Plaintiff's procedural due process claim as stating injuries caused by the state court judgments and inviting rejection of them.

The Court recognizes that courts have dismissed due process claims on *Rooker-Feldman* grounds where the plaintiffs sought to challenge state officials' enforcement of child support judgments. But in these cases, the *pro se* plaintiffs more directly challenged the underlying judgments that led to the enforcement mechanisms. *See, e.g., Remy v. New York State Dep't of Tax and Finance*, 507 F. App'x 16, 18–19 (2d Cir. 2013) (summary order) ("Remy's federal complaint seeks direct review of prior state court judgments."); *Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau*, No. 07-CV-3755 (JFB) (AKT), 2009 WL 580426, at *6 (E.D.N.Y. Mar. 5, 2009) (Bianco, J.) ("In short, plaintiff's submissions, including the court documents from Family Court, reveal that this action is essentially an attempt to vacate a judgment in Family Court for child support arrears prior to 1992 that are still outstanding, which Suffolk County has sought to enforce."); *Lions v. N.Y. State Office of Child Support Enforcement*, No. 1:24-CV-7181 (GHW), 2025 WL 81421, at *5 (S.D.N.Y. Jan. 10, 2025) (dismissing claims challenging garnishment of wages for payment of child support arrears, where claims asserted "that the family court violated his right to due process").[2] Indeed, in Plaintiff's prior federal action, he took this tack and directly

[2] In addition, in a summary order, the Second Circuit has held that a plaintiff's challenge to seizure of his cars to satisfy child support arrears was an injury "'produced by' or caused by the state-court judgment setting arrears," despite that the seizure was undertaken by third parties. *Fernandez v. Turetsky*, 645 F. App'x 103, 105 (2d Cir. 2016) (summary order). But it is unclear whether the plaintiff there mounted a procedural due process challenge to the method by which the seizure was undertaken, as Plaintiff does here, or rather a more direct challenge to the seizure of the cars themselves.

challenged the underlying family court judgments, so his claims were appropriate dismissed under the *Rooker-Feldman* doctrine. *See Smith I*, ECF No. 34. Here, by contrast, Plaintiff challenges the *process* by which Defendants have undertaken to enforce the state court judgments, not the underlying judgments themselves. Thus, the cases that have dismissed direct challenges to state court judgments are distinguishable.

*Rooker-Feldman* can also bar claims that are "inextricably intertwined" with the state court's determinations, but the Court cannot conclude that is the case here. *See Feldman*, 460 U.S. at 482–84 n.16; *Moccio v. N.Y. State Office of Court Admin.*, 95 F.3d 195, 198–99 (2d Cir. 2006), *abrogated on other grounds by Exxon Mobile Corp.*, 544 U.S. 280. "Inextricably intertwined" means, "at a minimum," that where a federal plaintiff had an opportunity to litigate a claim in a state proceeding . . . ., subsequent litigation would be barred under the *Rooker-Feldman* doctrine if it would be barred under principles of preclusion." *Vargas v. City of New York*, 377 F.3d 200, 205 (quoting *Phifer v. City of New York*, 289 F.3d 49, 55–56 (2d Cir. 2002). Here, in the state courts, Plaintiff is not litigating, and has not litigated, the question of whether his federal due process rights have been violated through Defendants' actions of withholding and placing a lien on his Social Security payments without a pre-deprivation hearing. Accordingly, Plaintiff's claim in the instant suit cannot fairly be characterized as "inextricably intertwined" with the state court judgment, at least as that phrase has been interpreted by the Second Circuit.

For these reasons, Plaintiff's claim escapes the *Rooker-Feldman* bar, and the Court need not dismiss the complaint for lack of subject matter jurisdiction under that doctrine.

B. <u>Eleventh Amendment Immunity</u>

Next, the Court finds that the Eleventh Amendment's grant of immunity bars Plaintiff's claims against the DSS and both individual Defendants.

The Eleventh Amendment to the U.S. Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." U.S. Const. amend. XI. As the Eleventh Amendment "restricts the judicial power under Article III," *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 72–73 (1996), a motion to dismiss on the basis of sovereign immunity under the Eleventh Amendment is properly brought under Rule 12(b)(1). *Long Island Pure Water Ltd. v. Cuomo*, 375 F. Supp. 3d 209, 215 (E.D.N.Y. 2019).[3]

The Eleventh Amendment generally precludes suits against a state unless an exception applies. *See CSX Trans., Inc. v. N.Y. St. Off. of Real Prop. Servs.*, 306 F.3d 87, 95, 98 (2d Cir. 2002). The Amendment's protections extend to suits brought against state officials sued in their official capacities, *Davis v. New York*, 316 F.3d 93, 101 (2d Cir. 2002), and to state agencies, *In re Charter Oak Assocs.*, 361 F.3d 760, 764 & n.1 (2d Cir. 2004). Here, because Plaintiff sues DSS, a state agency, and state officials in their official capacities, they would generally be immune from suit.

However, there are three recognized exceptions to Eleventh Amendment immunity: (1) when a state consents to a lawsuit; (2) when Congress abrogates a state's Eleventh Amendment immunity; or (3) when the lawsuit seeks prospective relief against state officials—otherwise

[3] As this Court has previously recognized, "[n]either the Second Circuit nor the Supreme Court has definitively determined whether the Eleventh Amendment is to be understood as a bar to subject matter jurisdiction or is 'more appropriately viewed as an affirmative defense.'" *Mallison v. Conn. Office of Early Childhood*, 634 F. Supp. 3d 21, 29 n.2 (D. Conn. 2022) (quoting *Ripa v. Stony Brook Univ.*, 808 F. App'x 50, 50 n. 1 (2d Cir. 2020)); *Allco Finance Ltd. v. Roisman*, No. 22-2726, 2023 WL 4571965, at *1 (2d Cir. July 18, 2023) (summary order). The Court believes that the opening phrase of the Eleventh Amendment, which provides that the "judicial power of the United States shall not be construed to extend" to certain suits, suggests that the Amendment limits the subject matter jurisdiction of the Court. Recognizing the uncertainty, however, the Court dismisses Plaintiff's claim against DSS *without* prejudice. *See Katz v. Donna Karan Company, L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) (recognizing that dismissals based on lack of subject matter jurisdiction must be without prejudice).

known as the *Ex parte Young* exception. *See CSX Trans., Inc.*, 306 F.3d at 95, 98; *see also Ex parte Young*, 209 U.S. 123 (1908). The first two exceptions do not apply here, as the state has not consented to this suit and Congress has not abrogated states' immunity for suits brought under Section 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979).

Under the *Ex parte Young* exception, a plaintiff may sue a state official acting in his official capacity for prospective, injunctive relief to remedy ongoing violations of federal law. *State Employees Bargaining Agent Coal. v. Rowland,* 494 F.3d 71, 95 (2d Cir. 2007). Because the *Ex parte Young* exception cannot save Plaintiff's Fourteenth Amendment due process claim against DSS as a state agency, DSS must be dismissed from this suit.

But *Ex parte Young* could, in theory, apply to Plaintiff's Fourteenth Amendment claim against Defendants Barton Reeves and Bourdoulous. To determine whether the *Ex parte Young* doctrine permits a plaintiff to defeat Eleventh Amendment immunity, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland,* 535 U.S. 635, 645 (2002) (internal quotations and citation omitted) (cleaned up). Accordingly, this analysis turns on whether Plaintiff has stated a plausible Fourteenth Amendment procedural due process claim that constitutes an ongoing constitutional violation.

Defendants' primary argument with respect to whether Plaintiff fails to state a claim is based on the statute of limitations. They contend that Plaintiff's Section 1983 claim is time-barred because it was not brought within three years of the underlying state court orders finding him liable for child support in the 1980s, 1990s, and early 2000s. ECF No. 30-1 at 16–17 (citing *Walker v. Jastremski*, 159 F.3d 117, 119 (2d Cir. 1998)). But this argument fundamentally misunderstands

the basis of Plaintiff's claim: he contests the procedure by which Defendants enforced those judgments—imposing a lien and withholding of Social Security benefits—not the judgments themselves. And, by Defendants' own submissions, the withholding and lien requests were not sent to the Social Security Administration until August 26, 2025, and appear to continue to the present day. *See* Reeves Aff., ECF No. 24-1 ¶ 10. As Plaintiff initiated this case within three years of those more recent actions, Plaintiff's claim is not barred by the statute of limitations.

Defendants make no effort to otherwise contend with the well-established standard for establishment of a Fourteenth Amendment procedural due process claim. "A Section 1983 claim to enforce the right to procedural due process is 'composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process.'" *Walker v. New York State Dep't of Health*, 788 F. Supp. 3d 427, 496 (E.D.N.Y. 2025) (quoting *Radwan v. Manuel*, 55 F.4th 101, 123 (2d Cir. 2022)). And due process ordinarily requires a hearing prior to the initial deprivation of a liberty or property interest. *See, e.g.*, *Chunn v. Amtrak*, 916 F.3d 204, 207 (2d Cir. 2019) (citing *Hodel v. Va. Surface Mining & Reclamation Ass'n*, 452 U.S. 264, 299 (1981)). As Defendants fail to argue that Plaintiff does not have either a property or liberty interest in his Social Security benefits or that the procedure provided to withhold them was adequate, the Court assumes that Plaintiff has stated an ongoing violation of federal law committed by Defendants Barton Reeves and Bourdoulous that falls within the *Ex parte Young* exception to Eleventh Amendment immunity.

Accordingly, the Court has subject matter jurisdiction over Plaintiff's claims against the individual Defendants.

## III. *YOUNGER* ABSTENTION

The Court concludes, however, that it must abstain from deciding Plaintiff's Fourteenth Amendment due process claim, under the abstention doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971).

### A. Legal Standard

*Younger* and its progeny provide that "federal courts should generally refrain from enjoining or otherwise interfering in ongoing state proceedings." *Spargo v. New York State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). Under this doctrine, "federal courts should refrain from interfering with core state court civil administrative processes, powers, and functions that allow the state courts to adjudicate the matters before them and enforce their judgments." *Cavanaugh v. Geballe*, 28 F.4th 428, 434 (2d Cir. 2022). While *Younger* is not a jurisdictional bar based on Article III requirements, it is a "threshold ground[]" on which a federal court may rely "for denying audience to a case on the merits." *Kaufman v. Kaye*, 466 F.3d 83, 88 n.1 (2d Cir. 2006); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 585 (1999).

*Younger* abstention applies in three "exceptional" circumstances: "(1) where there is a pending state criminal prosecution; (2) where there is a pending civil enforcement proceeding; or (3) where there is a pending civil proceeding 'uniquely in furtherance of the state courts' ability to perform their judicial functions.'" *Gristina v. Merchan*, 131 F.4th 82, 86–87 (2d Cir. 2025) (citing *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72–73 (2013)). The third category includes challenges to both the "processes by which the State compels compliance with judgments of its courts" and the way that state courts manage their own proceedings. *Id.* at 91 (quoting *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 14–15 (1987)); *see also Cavanaugh*, 28 F.4th at 434; *Sprint*, 571 U.S. at 72–73 (recognizing that the third *Younger* category encompasses state proceedings that "implicate a State's interest in enforcing the orders and judgments of its courts"). "[P]ost-

judgment bond and lien requirements" fall into *Younger*'s third category because they are 'processes by which the State compels compliance with the judgments of its courts,' . . . and they implicate the 'State's interest in protection the 'authority of the judicial system, so that its orders and judgments are not rendered nugatory.'" *Gristina*, 131 F.4h at 90 (quoting *Pennzoil*, 481 U.S. at 14–15 & *id.* at 14 n.12)).

In determining whether *Younger* abstention applies, courts may also appropriately consider three additional factors identified in *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423 (1982) that "further counsel in favor of abstention." *Cavanaugh*, 28 F.4th at 432. These factors include whether: "there is (1) an ongoing state judicial proceeding [that] (2) implicates important state interests and (3) provides an adequate opportunity to raise federal challenges." *Cavanaugh*, 28 F.4th at 432 (quoting *Sprint*, 571 U.S. at 81). These factors are not dispositive but, rather, are additional factors appropriately considered before invoking *Younger* abstention. *Id.* (citing *Sprint*, 571 U.S. at 81).

B. Discussion

The Court finds that the circumstances of this case fit within *Younger*'s third "exceptional" category: pending state proceedings involving orders "uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73.

As a threshold matter, the underlying family court actions remain pending and ongoing, insofar as they are pending appeal. *See Gristina*, 131 F.4th at 87 ("A civil proceeding is pending if further state appellate remedies are available at the time of the filing the federal complaint."). When Plaintiff filed this federal complaint in April of 2026, his appeals of the state courts' decisions denying his motions to open both his marriage dissolution action and his parentage petition action were pending in the Connecticut Appellate Court. *Denise Smith v. Darren M. Smith*, AC 49791 (Conn. App.); *Richard v. Smith*, AC 49472 (Conn. App.)

Next, this is the type of case that falls within *Younger*'s purview. Plaintiff challenges the manner in which Defendants have sought to enforce the judgments of the Connecticut Superior Court in his family court matters, and seeks to have the federal court enjoin their method of enforcement. Defendants' actions were taken in furtherance of the state courts' ability to enforce its judgments. Indeed, courts have held that lien requirements and post-judgment means of executing a judgment fall plainly into *Younger*'s third category, and federal suits seeking to challenge them require abstention. *Sargent v. Emons*, No. 3:13-CV-863 (JBA), 2013 WL 6407718, at *4 (D. Conn. Dec. 9, 2013), *aff'd*, 582 Fed. Appx. 51 (2d Cir. 2014) (unpublished) (collecting cases); *see also Pennzoil Co.*, 481 U.S. at 14–15.[4] And courts routinely abstain on *Younger* grounds when a plaintiff seeks intervention in an ongoing child support enforcement proceeding. *See Smith v. Stack*, No. 1:23-CV-9451 (LTS), 2024 WL 54292, at *5 (S.D.N.Y. Jan. 2, 2024) (collecting cases).

Moreover, the additional, non-dispositive factors weigh in favor of abstention here. There are two ongoing state judicial proceedings that implicate important state interests. *See Cavanaugh*, 28 F.4th at 432–433; *Haynie v. NYS Child Support Enforcement Agency*, No. 1:25-CV-306 (MAD/TWD), 2025 WL 1332975, at *5 (N.D.N.Y. Apr. 3, 2025) (collecting cases); *Moore v. Sims*, 442 U.S. 415, 435 (1979) ("Family relations are a traditional area of state concern."). Moreover, there are no facts alleged in Plaintiff's complaint, or in his opposition to Defendants' motion to dismiss, suggesting that he lacks an adequate opportunity to raise his constitutional claims in the Superior Court. "[T]o avoid abstention, plaintiffs must demonstrate that state law

[4] In *Pennzoil*, the Supreme Court recognized that federal injunctions prohibiting enforcement of state court judgments would interfere with state proceedings "on grounds that challenge the very process by which those judgments were obtained." 481 U.S. at 14. In that manner, there is some overlap between a finding that *Younger*'s third category is implicated here because Plaintiff challenges the manner of execution of state court judgments and the idea that Plaintiff is, in fact, challenging the underlying state court judgments. But the Court finds that *Younger* abstention is a proper analytical fit here, while *Rooker-Feldman* is not, for the reasons discussed above.

bars the effective consideration of their constitutional claims." *Spargo*, 351 F.3d at 78. Here, the Superior Court can address his claims and provide any appropriate relief. Thus, abstention is appropriate. *See Cavienss v. Connecticut Dep't of Soc. Servs.*, No. 25-CV-1268 (SFR), 2026 WL 1068032, at *3 (D. Conn. Apr. 20, 2026) (abstaining under *Younger* where the complaint sought an injunction against continued enforcement of child support obligations pending in state court.

Nor is the Court convinced that any exceptions to *Younger* are applicable. A federal court may "intervene in a state proceeding upon a showing of 'bad faith, harassment or any other unusual circumstance that would call for equitable relief.'" *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (quoting *Younger*, 401 U.S. at 54). Plaintiff, who bears the burden of establishing that one of the exceptions applies, *id.*, does not argue that any do. But even considering the issue *sua sponte*, the Court cannot conclude that there has been any bad faith or harassment of Plaintiff in the context of the state court litigation, or that the state court is an inadequate forum to address his constitutional claims. As the Second Circuit has explained, a "state proceeding that is legitimate in its purposes, but unconstitutional in its execution—even when the violations of constitutional rights are egregious—will not warrant the application of the bad faith exception." *Id.* at 199 (quoting *Schlagler v. Phillips*, 166 F.3d 439, 443–44 (2d Cir. 1999)). Instead, the plaintiff must show that "the state proceeding was initiated with and is animated by a retaliatory, harassing, or other illegitimate motive." *Id.* There are no allegations of such behavior on the part of Defendants here.

Thus, the Court finds that Plaintiff's claims are barred by the *Younger* abstention, and no exceptions apply. Accordingly, the Court must dismiss the complaint.

## IV. PRELIMINARY INJUNCTION

As the Court has held that it must abstain from this case under *Younger* and dismiss the complaint, Plaintiff's motion for a preliminary injunction is denied as moot.

## V. CONCLUSION

For the reasons described herein, Defendants' motion to dismiss, ECF No. 30, is GRANTED. Plaintiff's Motion for a preliminary injunction, ECF No. 2, is DENIED as moot. Defendant DSS is dismissed from this suit without prejudice, as the Court lacks subject matter jurisdiction over Plaintiff's claim against it.

The Clerk is directed to enter judgment for Defendants and close this case.

**SO ORDERED** at Hartford, Connecticut, this 26th day of October, 2026.

*/s/ Sarala V. Nagala*
SARALA V. NAGALA
UNITED STATES DISTRICT JUDGE